Evan Martyndale Livingstone, SBN 252008
LAW OFFICE OF EVAN LIVINGSTONE
719 Orchard Street
Santa Rosa, CA 95404
Tel: (707) 526-7749
Fax: (707) 676-9112

Attorney for Plaintiff IVY QUEIROLO

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | CASE NO. 07-11519 |
| MARIN DUANE BENSEN | CHAPTER 7 |
| DEBTOR | |
| IVY QUEIROLO ) | A.P. NO. 08-01023 |
| ) | |
| Plaintiff, ) | PLAINTIFF'S PROPOSED FINDINGS |
| ) | OF FACT AND CONCLUSIONS OF LAW |
| vs. ) | |
| ) | Trial Date: March 10, 2009, 1:30 PM |
| MARTIN DUANE BENSON, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

Plaintiff IVY QUEIROLO files the following Proposed Findings Of Fact And Conclusions Of Law pursuant to the Court's Scheduling Conference and Notice of Trial Order, dated November 19, 2008:

PROPOSED FINDINGS OF FACT

1. On or about December 28, 2006, Ivy Quirolo, the plaintiff-creditor in this matter, entered into a written agreement with Martin Bensen, the debtor-defendant in which Bensen sold

a one acre undivided interest in his property to Quirolo in exchange for $100,000. (See attachment to complaint."

2. On or about December 28, 2006, Bensen told Quirolo, that if the property could not be divided to provided Quirolo a separate acre, Bensen promised he would nonetheless build Quirolo a "granny unit" on the property were Quirolo could live.

3. At the time Bensen made the above promise, Bensen knew in fact that the property could not be divided.

4. At the time Bensen made the above promise, Bensen had no intention of building a granny unit and allowing Quirolo to live in it.

5. On or about December 28, 2006, Benson took from Quirolo's friend, Jerry Chesley, a cashier's check for $50,000. (See Exhibit 33).

6. On or about February 10, 2006, Benson took from Quirolo's friend, Jerry Chesley, a second cashier's check for $50,000. (See Exhibit 34).

7. On July 20, 2007, a Notice of Default, on the property was filed with the Sonoma County Recorder's office. (See Exhibit 35)

8. Throughout June and August of 2007, Bensen refused to answer Quirolo's emails and telephone calls.

9. On or about August 30, 2009, Quirolo visited the subject property for the purpose of enforcing her interest in the property.

10. At that time, Bensen refused to talk to Quirolo. Bensen's mother, Mary Albaugh, demanded that Quirolo get off the property and never return.

11. On October 24, 2007, a Notice of Trustee's Sale of the property was filed with the Sonoma County Recorder's office. (See Exhibit 35)

PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW – 2
Case: 08-01023   Doc# 17   Filed: 03/03/09   Entered: 03/03/09 23:36:05   Page 2 of 7

12. On January 7, 2008, a Trustee's Deed Upon Sale of the property was filed with the Sonoma County Recorder's office, (See Exhibit 31), thereby cutting off Quirolo from any interest in the property.

## PROPOSED CONCLUSIONS OF LAW

Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a discharge does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To prevail in a non-dischargeability action under Section 523(a)(2)(A), a creditor must prove by a preponderance of evidence that: (1) the debtor made a false representation; (2) at the time the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damage as a proximate result of the representation having been made. *Field v. Mans*, 516 U.S. 59 (1995) (justifiable reliance); *Grogan v. Garner*, 498 U.S. 279 (1991)(burden of proof); *Moen*, 238 B.R. at 790 (elements of proof under §523(a)(2)(A)).

### (1) THE DEBTOR MADE A FALSE REPRESENTATION WHEN HE PROMISED CREDITOR HE WOULD BUILD HER A GRANNY UNIT ON THE PROPERTY

Martin Bensen's statement to Ivy Quirolo was a false statement because Bensen did not have an intention or a plan to follow through on this promise to build Quirolo a granny unit on the property. Between the time that Bensen took Quirolo's friend's money in approximately December 2006 and when the property was foreclosed in approximately December 2007, Bensen

did not even begin building a granny unit on the property, neither did Bensen make payments on the property with the money Quirolo had given him in order to protect Quirolo's interest in the property.

(2) AT THE TIME THE DEBTOR MADE HIS FALSE REPRESENTATION HE KNEW HIS REPRESENTATION WAS FALSE, BECAUSE HIS REAL INTENTION WAS NOT TO BUILD A GRANNY UNIT FOR CREDITOR, BUT RATHER TO TAKE CREDITOR'S MONEY AND SOMEHOW GET RID OF HER.

In order to qualify as fraud the debtor must make his false representation with the knowledge that representation was a false statement. Here proof that Bensen knew he was not planning to follow through on this promise to Ivy build a granny unit can be inferred from the fact that debtor did not take any steps to actually begin building a granny unit for Quirolo, nor did take steps to persevere his interest in the property by paying the mortgage payments on the property with the $100,000 given to Bensen by Quirolo and her friend.

(3) THE DEBTOR MADE THE REPRESENTATION DELIBERATELY AND INTENTIONALLY WITH THE INTENTION AND PURPOSE OF DECEIVING THE CREDITOR BECAUSE HE PLANNED TO SPEND THE MONEY ON HIS OWN NEEDS RATHER THAN PRESERVING THE PROPERTY AND CONSTRUCTING A GRANNY UNIT FOR

To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. Here, again proof that Bensen knew he was not planning to follow through on this promise to Ivy build a granny unit can be inferred from the fact that debtor did not take any steps to actually begin building a granny unit for Quirolo, nor did take

steps to persevere his interest in the property by paying the mortgage payments on the property with the $100,000 given to Bensen by Quirolo and her friend.

Furthermore when Bensen and his mother ordered Quirolo off of the property at the end of August 2007, they actions confirmed that Bensen's intent has to take Quirolo's money without giving her the benefit of the bargain and then just get rid of her.

(4) THE CREDITOR JUSTIFIABLY RELIED ON DEBTOR'S FALSE REPRESENTATION BECAUSE DEBTOR COURTED CREDITOR'S FINANCIAL ASSISTANCE OVER A PERIOD OF SIX MONTHS AND MADE REPEATED ASSURANCES TO CREDITOR THAT HE WOULD PERFORM

The Creditor must have justifiably relied on the representation for fraud to exist. Justification is a matter of the qualities and characteristics of the particular plaintiff and the circumstances of the particular case. *Field v. Mans*, 516 U.S. at 71(citing Restatement (Second) of Torts, §540 (1976)).

In the instant case, the debtor Martin Bensen, made in numerous and repeated assurances to Ivy Quirolo that he would build a granny unit for Ms. Quirolo on his property. Furthermore, Benson took Quirolo to see an attorney on at least one occasion to discuss the feasibility of keeping the subject property, further lending weight to Quirolo's justifiable reliance on Bensen's false and misleading statement.

(5) THE CREDITOR SUSTAINED LOSS AND DAMAGE AS A PROXIMATE RESULT OF THE REPRESENTATION HAVING BEEN MADE, BECAUSE CREDITOR GAVE DEBTOR MORE THAN $100,000 TO SECURE AN INTEREST IN THE PROPERTY – BUT NEVER RECEIVED HER SHARE OF SUCH INTEREST

Plaintiff-creditor Ivy Quirolo gave Defendant-debtor Martin Bensen over $122,000. For this money she received nothing, therefore Quirolo has been damaged by over $122,000.

Therefore, Plaintiff having satisfied all of the elements of fraud, she asks for a ruling from this court that the debt Debtor owes to her was obtained by false pretenses, a false representation, or actual fraud, and therefore Debtor's debt is not dischargeable in bankruptcy.

DATED: March 3, 2009

*Evan Livingstone*
_____
Evan Livingstone
Attorney for Plaintiff Ivy Queirolo

```
Evan Martyndale Livingstone, SBN 252008
LAW OFFICE OF EVAN LIVINGSTONE
719 Orchard Street
Santa Rosa, CA 95404
Tel:  (707) 526-7749
Fax: (707) 676-9112


Attorney for Plaintiff IVY QUEIROLO
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | CASE NO. 07-11519 |
| MARIN DUANE BENSEN | CHAPTER 7 |
|     DEBTOR | |
| IVY QUEIROLO    ) | A.P. NO. 08-01023 |
|     Plaintiff,    ) | Certificate of Service |
|     vs.    ) | |
| MARTIN DUANE BENSON,    ) | |
|     Defendant    ) | |

    I hereby certify that on March 3, 2009, a copy of Plaintiff's Proposed Findings of Facts and Conclusions of Law, along with Exhibits along with a substitution of attorney, was served electronically or by regular United States mail to Defendant's attorney as follows:

```
        PAUL M. JAMOND, Esq.
        Attorney at Law
        200 Fourth Street #300
        Santa Rosa, CA 95401
```

DATED: March 3, 2009

                                                            _____
                                                            Evan Livingstone
                                                            Attorney for Plaintiff Ivy Queirolo